COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Moon, Judges Benton and Elder
Argued at Richmond, Virginia


MICHAEL ANTHONY STARR, A/K/A MICHAEL SAUCERE,
 A/K/A MICHAEL SAUCIER, A/K/A KEITH SHEPPARDSON,
 A/K/A JUNO IRVING
                                    MEMORANDUM OPINION[*] BY
v.          Record No. 2294-93-2      JUDGE LARRY G. ELDER
                                      AUGUST 15, 1995
COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF HENRICO COUNTY
                    James E. Kulp, Judge


           Betty Layne DesPortes (Steven D. Benjamin;
           Steven D. Benjamin and Associates, on briefs),
           for appellant.

           H. Elizabeth Shaffer, Assistant Attorney General
           (James S. Gilmore, III, Attorney General, on
           brief), for appellee.


     Michael Anthony Starr (appellant) appeals his convictions

for attempted robbery in violation of Code §§ 18.2-26 and 18.2-58

and two counts of use of a firearm in commission of a felony in

violation of Code § 18.2-53.1.  Appellant contends that the trial

court improperly limited the scope of cross-examination of a

prosecution witness.  Because the trial court committed no

reversible error, we affirm appellant's convictions.

     As the parties are well-acquainted with the relevant facts,

we repeat only those facts necessary to our discussion.  On

August 10, 1992, a manager of a McDonald's in Henrico County was

_____

        [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

shot once in the head. Minutes later, Patricia Justice was accosted in front of her house, which was approximately one-quarter-mile from McDonald's.

On October 20 and 22, 1993, appellant was tried before a jury and was convicted of attempted robbery and two firearms charges stemming from these incidents. George Bond and Alfred Robinson testified for the prosecution and implicated appellant in the incidents. Bond provided many of the details supporting appellant's convictions, including the whereabouts on the night in question of himself, appellant, and Robinson; the clothing they wore; the weapons they carried; and the crimes they committed.

Appellant wished to cross-examine Robinson on aspects relating to his flight from the jurisdiction after he had been released on bond in an unrelated grand larceny to which he pled guilty. Appellant theorized that Robinson agreed to testify in appellant's trial to gain release from jail and flee; that Robinson was aware that his version of the McDonald's events were untrue; and that Robinson's flight constituted a consciousness of guilt. The trial court prevented appellant from establishing specific facts relating to Robinson's non-compliance with his release.

Appellant also asked the court for permission to cross-examine Robinson on certain issues tending to show bias. Appellant theorized that Robinson hoped to gain leniency in his

sentencing on the grand larceny charge and a separate show-cause hearing on a ten-year suspended sentence, after he testified favorably for the prosecution in appellant's case. Appellant tried to introduce Robinson's presentence report, which contained details of the grand larceny crime and the evidence of possible flight. However, the trial court prevented appellant from asking Robinson details concerning the grand larceny conviction and did not allow the presentence report to be introduced into evidence, ruling that any details contained within the plea agreement were irrelevant and collateral.

Robinson admitted on cross-examination that the Commonwealth offered him concessions in exchange for his testimony in appellant's case. Robinson, whose testimony at trial generally corroborated Bond's testimony, also acknowledged five felony convictions.

We hold that the trial court did not err in limiting appellant's cross-examination of Robinson. We are guided by certain well-accepted principles.

> Cross-examination of prosecution witnesses is fundamental to the truth-finding process and is an absolute right guaranteed to an accused by the confrontation clause of the sixth amendment. . . . Subject to such reasonable limitations as the trial court may impose, a party has an absolute right to cross-examine his opponent's witness on a matter relevant to the case . . . .

Maynard v. Commonwealth, 11 Va. App. 437, 444, 399 S.E.2d 635, 639-40 (1990)(en banc)(citations omitted); see Whittaker v.

3

<u>Commonwealth</u>, 217 Va. 966, 967, 234 S.E.2d 79, 79 (1977)(trial court erred in ruling that defendant could not cross-examine prosecution witness about lenient sentences witness received in exchange for his testimony at defendant's trial, where witness was the only one who directly implicated defendant).

While an inquiry into bias is always relevant, a "trial court has discretion to limit the scope of cross-examination which is for the purpose of establishing bias." <u>Norfolk & W. Ry. v. Sonney</u>, 236 Va. 482, 488, 374 S.E.2d 71, 74 (1988). As the United States Supreme Court has stated:

> It does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. And as we observed . . . "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." <u>Delaware v. Fensterer</u>, 474 U.S. 15, 120 (1985)(per curiam).

<u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 678 (1986); <u>see</u> <u>Scott v. Commonwealth</u>, 18 Va. App. 692, 694, 446 S.E.2d 619, 620 (1994)(stating that the liberties of a cross-examiner to show a witness' bias are not unlimited); <u>Williams v. Commonwealth</u>, 4 Va. App. 53, 77-78, 354 S.E.2d 79, 93 (1987)(stating that a trial court "'may exercise discretion to see that the right of cross-

4

examination is not abused once the right to cross-examine has been fairly and substantially exercised.'")(citation omitted).

Appellant was permitted to cross-examine Robinson concerning his past felony convictions for crimes involving lying, cheating, and stealing. Appellant was also allowed to cross-examine Robinson regarding the outstanding grand larceny conviction for which he had not yet been sentenced. During extensive questioning, Robinson specifically admitted that he had been granted bond and released from jail while awaiting sentencing on that charge, and that he was testifying in exchange for the Commonwealth recommending a twelve-month sentence on that charge. Furthermore, Robinson conceded that he was charged in the attempted robbery of McDonald's and that his trial on that charge had been continued. Finally, appellant elicited from Robinson the fact that a show-cause hearing had not yet been held to determine whether Robinson's ten-year suspended sentence would be revoked.

In light of these facts, this case can be distinguished from other cases, such as Whittaker, where the defendant's right to show a witness' bias was abused. In Whittaker there was only one prosecution witness whose testimony directly implicated defendant, whereas in this case, at least two prosecution witnesses provided credible evidence that implicated appellant in the crimes with which he was charged. Furthermore, in Whittaker, the defense was prohibited from cross-examining the prosecution

5

witness on <u>any</u> aspect of the lenient sentences he received in exchange for his testimony in defendant's trial. In this case, appellant cross-examined Robinson at length about various "deals" that had been struck between Robinson and the Commonwealth in exchange for Robinson's testimony.

As we have explained, the trial court's decision to exclude cumulative evidence is entitled on review to a presumption of correctness. <u>Harrison v. Commonwealth</u>, 244 Va. 576, 585, 423 S.E.2d 160, 165 (1992). Adhering to this standard of review, we believe that the trial court set reasonable limitations on appellant's right to question Robinson, while still protecting appellant's right to confront Robinson and explore his credibility and bias. Given the extent to which Robinson's credibility was impeached, "it is doubtful that additional evidence in this regard would have made a difference in the jury's opinion of his credibility." <u>Fitzgerald v. Bass</u>, 6 Va. App. 38, 55, 366 S.E.2d 615, 625 (1988), <u>cert. denied</u>, 493 U.S. 945 (1989). Allowing the introduction of further evidence detailing specific aspects of Robinson's presentence report would have been repetitive and marginally relevant at best.

Furthermore, the trial court did not err in refusing to admit evidence that allegedly showed Robinson's flight, from which appellant hoped the jury would conclude that Robinson knew his version of the crimes lacked credibility and knew that he was "more guilty" than appellant. Appellant's theories as to

Robinson's alleged flight and its impact on his testimony were irrelevant and speculative, and the trial court did not abuse its discretion in excluding certain evidence to support these theories. <u>Blain v. Commonwealth</u>, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988)("The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion.").

For the foregoing reasons, we affirm appellant's convictions.

<u>Affirmed.</u>

BENTON, J., dissenting.

"[A] primary interest secured by [the Sixth Amendment to the Constitution] is the right of cross-examination." Douglas v. Alabama, 380 U.S. 415, 418 (1965). Emphasizing the primacy of that interest, the Supreme Court of the United States has stated that the denial of the right to conduct a proper cross-examination to develop a witness' bias "'would be constitutional error of the first magnitude.'" Smith v. Illinois, 390 U.S. 129, 131 (1968) (citation omitted). "The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence." United States v. Nixon, 418 U.S. 683, 709 (1974).

Invoking the Constitution of Virginia and statutory law, the Supreme Court of Virginia has also recognized that "[o]ne of the most zealously guarded rights in the administration of justice is that of cross-examining an adversary's witnesses." Moore v. Commonwealth, 202 Va. 667, 669, 119 S.E.2d 324, 327 (1961). The Court so zealously guards that right because "[o]ne purpose of cross-examination is to show that a witness is biased and his testimony is unreliable because it is induced by considerations of self-interest." Barker v. Commonwealth, 230 Va. 370, 376, 337 S.E.2d 729, 733 (1985).

The witness whom the trial judge refused to allow the defendant to fully cross-examine at the trial of this case had

8

admitted his own guilt in the offenses for which the defendant had been charged and was assisting the Commonwealth in its prosecution. The trial judge refused to allow the defendant to cross-examine the confessed accomplice regarding the accomplice's flight from prosecution and a pending criminal charge that had been held in abeyance while the accomplice cooperated in the defendant's prosecution. That ruling was error.

The principle is well established that in exploring the depths of a witness' self-interest, "the cross-examiner is not only permitted to delve into the witness' story to test the witness' perception and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness." Davis v. Alaska, 415 U.S. 308, 316 (1974). Moreover, because a testifying accomplice is exposed to great temptation to curry favor, the examination of that witness' testimony is generally of critical importance in a criminal trial. Recognizing the danger of such testimony, the Supreme Court has stated that "[a]ny evidence is admissible which tends to affect the credibility of accomplices or the weight of their testimony by showing what influences, if any, were brought to bear upon them." Woody v. Commonwealth, 214 Va. 296, 297-98, 199 S.E.2d 529, 531 (1973).

In order to give effect to the principle that "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-

9

examination," <u>Davis</u>, 415 U.S. at 316-17, a trial judge may not limit the right of defense counsel to cross-examine an accomplice unless the record clearly establishes that counsel has fully exercised the right to cross-examine and has begun to abuse the right.

> It is only after the right of cross-examination has been substantially and fairly exercised that the allowance of further cross-examination becomes discretionary with the court. The right, when not abused, is an absolute right and not a mere privilege of a party against whom a witness testifies.

<u>Moore</u>, 202 Va. at 669, 119 S.E.2d at 327. Moreover, the rule is well established that "[d]efense counsel should be afforded great latitude in cross-examining accomplices testifying against a defendant." <u>Woody</u>, 214 Va. at 98, 199 S.E.2d at 531.

The trial judge's ruling that these issues were collateral and irrelevant was plainly wrong. An accomplice's conduct for which the prosecution has shown leniency is always relevant. <u>Hewitt v. Commonwealth</u>, 226 Va. 621, 623, 311 S.E.2d 112, 114 (1984). Bias may always be shown by facts that prove that an accomplice had "a motive for favoring the prosecution in his testimony." <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 679 (1986). "The bias of a witness . . . is not a collateral matter . . . [and] is always a relevant subject of inquiry." <u>Henson v. Commonwealth</u>, 165 Va. 821, 825-26, 183 S.E. 435, 437 (1936). Indeed, "a defendant is entitled to show that testimony of a prosecution witness was motivated by an expectation of leniency

10

in a future trial." Whittaker v. Commonwealth, 217 Va. 966, 968, 234 S.E.2d 79, 81 (1977).

The defendant was entitled to establish the details of the inducements in order "to reveal to the jury the full weight of any pressures brought to bear on [the accomplice], at the time he testified, which might motivate him to depart from the truth." Hewitt, 226 Va. at 623, 311 S.E.2d at 114. Defense counsel's attempt to do so was not cumulative but rather was an effort to cause the accomplice "to admit the complete details of the inducement." Bradshaw v. Commonwealth, 16 Va. App. 374, 379, 429 S.E.2d 881, 884 (1993). The refusal to permit that line of inquiry on cross-examination was error. Id.

We have a long line of established precedent to emphasize the principle that the jury is the sole judge of the credibility of the witnesses. E.g., Mitchell v. Commonwealth, 141 Va. 541, 558, 127 S.E. 368, 374 (1925); Brooks v. Commonwealth, 15 Va. App. 407, 414, 424 S.E.2d 566, 571 (1992); Estes v. Commonwealth, 8 Va. App. 520, 524, 382 S.E.2d 491, 493 (1989). When the trial judge refused to allow defense counsel to fully cross-examine the witness to test his bias and self interest, the jury was deprived of the ability to fully and fairly discharge its function as the finder of fact. See Andrews v. C. & O. Ry., 184 Va. 951, 957, 37 S.E.2d 29, 31-32 (1946). That ruling was not based upon any showing of abusive cross-examination. Because the limitation on cross-examination was improperly invoked, the trial judge

11

undermined the defendant's constitutional right to cross-examination and subverted the proper functioning of the adversarial process.

For these reasons, I would reverse the conviction and remand for a new trial.  I dissent.