COURT OF APPEALS OF VIRGINIA


Present:   Judges Beales, Powell and Alston
Argued at Richmond, Virginia


STEPHEN L. NELSON, S/K/A
    STEPHEN LEONARD NELSON

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 2936-08-2                      JUDGE RANDOLPH A. BEALES
                                                    JANUARY 12, 2010

COMMONWEALTH OF VIRGININA


                    FROM THE CIRCUIT COURT OF HALIFAX COUNTY
                              William L. Wellons, Judge

            Robert H. Morrison (Law Office of Robert H. Morrison, P.C., on
            brief), for appellant.

            Leah A. Darron, Senior Assistant Attorney General (William C.
            Mims, Attorney General, on brief), for appellee.


        Stephen L. Nelson (appellant) was convicted by a jury of first-degree murder, in violation

of Code § 18.2-32, and use of a firearm during the commission of the murder, in violation of

Code § 18.2-53.1.  Appellant argues on appeal that the trial court abused its discretion when it

refused to permit him to cross-examine a prosecution witness concerning the witness' unrelated

robbery indictment.  We disagree with appellant's argument, and, for the following reasons, we

affirm appellant's convictions.

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

# I. BACKGROUND

In the early morning of July 7, 2007, the body of the victim, A.R.,[1] was found in a rural area of Halifax County. A.R. died from a single gunshot wound to the head. Investigator J.D. Clay found a live round, a spent casing, and a bullet near A.R.'s body.

On July 9, 2007, two days after A.R.'s body was discovered, Investigator Clay met with Jacob Bunker, who identified himself as a long-time friend of appellant. Bunker told the investigator that appellant killed A.R. on July 6, 2007.

According to Bunker, he and appellant drank large quantities of alcohol and smoked marijuana on July 6, while traveling to various places in appellant's red Dodge Stratus. After stopping for dinner on their way to Danville, they saw A.R. walking on the side of the road. A.R., who said that she needed a ride to Danville, got in the back seat of the vehicle. While appellant drove in the direction of Danville, A.R. accepted $10 in exchange for giving Bunker oral sex and then engaged in consensual intercourse with Bunker. Appellant proceeded to drive to a field. Appellant and A.R. then exited the vehicle presumably to engage in sexual activity, Bunker told the investigator. As appellant exited the vehicle, Bunker saw the handle or grip of a Ruger firearm tucked into the waistband of appellant's pants. Moments later, as A.R. began to get back in the vehicle, appellant told her that she had "dropped twenty bucks" near the rear of the vehicle. Bunker could hear A.R. reply that she did not see any money there. Bunker then heard a gunshot, and something hit the ground. Appellant got in the driver's seat, said to Bunker that "that b**ch thought she was going to get my twenty bucks," and drove away.

Based on this information, Investigator Clay obtained a search warrant for appellant's residence, where a firearm matching Bunker's description and a t-shirt containing A.R.'s blood

---

[1] We use initials for the victim in this opinion rather than her actual name so as better to protect the privacy of the deceased victim and her family.

were found.  Blood stains from A.R. were also found on the rear wheel well and along the rear passenger door running board of appellant's car, as well as on the back of the car's front seat.

On October 16, 2007, Bunker was arrested in Pittsylvania County on a robbery charge that, appellant acknowledges, was unrelated to A.R.'s murder.

At appellant's preliminary hearing on December 12, 2007, appellant's counsel asked Bunker if he had sought "any credit or preferential treatment" in his Pittsylvania County case in exchange for testifying against appellant in the Halifax County murder trial.  Bunker responded that he had asked his lawyer whether "help[ing] out the Commonwealth" by giving the authorities information on the A.R. murder would "be an outlook on my case."  Appellant's counsel then asked Bunker whether he hoped "that what you say today is going to help you in your other collateral problems."  Bunker said that he did not harbor such a hope "because it doesn't work like that."

After Bunker testified at appellant's preliminary hearing – but before appellant's trial occurred – the Pittsylvania County robbery indictment against Bunker was discharged by *nolle prosequi*.  The Halifax County prosecutor in appellant's murder case indicated that her office had nothing to do with the dismissal of the Pittsylvania County charge and had never offered any deal to Bunker for his testimony in appellant's case.

The Commonwealth filed a pretrial motion *in limine* to prohibit appellant from introducing at his murder trial "[t]he allegations, arrest, detention or any information whatsoever concerning charges placed against Jacob Bunker subsequent to the present charges being placed against the Defendant."  The trial court ruled that appellant's counsel was permitted to ask Bunker whether he "received any offers of leniency from this jurisdiction or any other jurisdiction in exchange for his testimony," but that counsel was not permitted to reference the specific Pittsylvania County robbery charge *unless* Bunker indicated that he, in fact, received

offers of leniency.  At trial, Bunker testified that he did not receive any offers of leniency in exchange for his testimony.

## II. ANALYSIS

Appellant argues that the trial court erred by refusing to permit his cross-examination of Bunker regarding the Pittsylvania County charge.  The court's evidentiary ruling here is reviewed for abuse of discretion.[2]  Commonwealth v. Wynn, 277 Va. 92, 97, 671 S.E.2d 137, 139 (2009).

"An accused has a right to cross-examine prosecution witnesses to show bias or motivation [to fabricate] and that right, *when not abused*, is absolute."  Brown v. Commonwealth, 246 Va. 460, 463-64, 437 S.E.2d 563, 564-65 (1993) (emphasis added).  When evidence "is relevant to show that a witness is biased or has a motive to fabricate, it is not collateral and should be admitted."  Banks v. Commonwealth, 16 Va. App. 959, 963, 434 S.E.2d 681, 683 (1993).  However, the right to cross-examine a witness to show bias or motivation to fabricate "may not be employed as a device to confuse the issues before the jury or to imply the existence of evidence that the jury is not permitted to consider."  Lewis v. Commonwealth, 269 Va. 209, 214, 608 S.E.2d 907, 910 (2005).  Thus, an appellate court "must examine the substance of the anticipated testimony" to determine whether an accused's right to cross-examine a prosecution witness has been violated.  Brown, 246 Va. at 464, 437 S.E.2d at 565.

Appellant contends that the trial court erroneously focused on whether Bunker actually entered into an agreement for leniency on his Pittsylvania County robbery charge – which, appellant concedes, Bunker did not.  Instead, appellant asserts that the appropriate inquiry was

---

[2] The Commonwealth also argues that, even if the trial court abused its discretion here, the convictions should be affirmed under the harmless error doctrine because Bunker was cross-examined concerning a prior felony conviction for lying to a police officer that occurred after the date of A.R.'s murder and because the evidence of appellant's guilt was overwhelming.  Because we hold that the trial court did not abuse its discretion here, we need not address the Commonwealth's claim of harmless error.

whether Bunker had a subjective belief that he could receive favorable treatment on his robbery charge by testifying at appellant's murder trial. Appellant relies on Bunker's statement at the preliminary hearing that he asked his attorney whether testifying against appellant would "be an outlook" on his Pittsylvania County case.

Appellant, however, was required to point to at least some evidence permitting an inference that Bunker's testimony was motivated or induced "by considerations of self-interest." See Barker v. Commonwealth, 230 Va. 370, 376, 337 S.E.2d 729, 734 (1985); see also Woody v. Commonwealth, 214 Va. 296, 299, 199 S.E.2d 529, 531 (1973) (holding that a "predicate for bias" existed when two witnesses, who confessed to participating in the robbery with Woody, were not charged in the offense); Banks, 16 Va. App. at 964, 434 S.E.2d at 684 ("If believed, the trier of fact could reasonably infer from the defendant's proffered evidence that Barnwell had a strong motive to implicate the defendant in order to conceal his own alleged drug-dealing activities.").

In Brown, for instance, the defendant tried to elicit facts showing that a prosecution witness, Sydow, had not yet been tried for several crimes – thereby permitting an inference that Sydow could receive leniency in return for his testimony against him. Brown, 246 Va. at 462, 437 S.E.2d at 564. The Supreme Court held that the trial court erroneously prevented Brown from asking cross-examination questions that could establish Sydow "was motivated by a bargain for leniency relating to the charges pending against him, *particularly since Sydow admitted that the trial of those charges had been continued each month since the date of his arrest.*" Id. at 464, 437 S.E.2d at 565 (emphasis added).

In this case, unlike in Brown, no evidence connected Bunker's testimony in appellant's murder trial with a possibility of leniency in his Pittsylvania County robbery case. Bunker's robbery indictment had already been dismissed by *nolle prosequi* well before appellant's trial

date, and nothing indicated that this disposition in Pittsylvania County was connected in any way to Bunker's testimony in appellant's Halifax County murder trial. Instead, the Halifax County prosecutor here unequivocally stated that her office had no input in the decision in Pittsylvania County to discharge Bunker's robbery indictment, and appellant did not challenge this assertion. Thus, the fact that Bunker's Pittsylvania County robbery charge was *nolle prosequied* prior to appellant's murder trial[3] in Halifax County had no bearing on Bunker's credibility as a witness.

Appellant's claim that Bunker was biased or had a motive to fabricate the murder allegation against him at trial is further undercut by the fact that Bunker implicated appellant in A.R.'s murder on July 9, 2007, over three months *before* Bunker was charged with robbery in Pittsylvania County on October 16, 2007. Therefore, when Bunker gave his statement against appellant on July 9, 2007, he could not have been motivated by a possible bargain for leniency in his Pittsylvania County case, which did not even exist at the time.

In sum, the purported connection between Bunker's robbery charge and his testimony at appellant's murder trial is simply too tenuous to permit the inference of witness bias or motive to fabricate. See Banks, 16 Va. App. at 963, 434 S.E.2d at 683. Accordingly, the trial court did not abuse its discretion in granting the Commonwealth's motion *in limine* here.

---

[3] Appellant argues that, even though Bunker's robbery charge had been *nolle prosequied* by the time of appellant's murder trial, Bunker's testimony could still have been influenced by a hope that he would not be re-indicted on the robbery charge at some time thereafter. See Miller v. Commonwealth, 217 Va. 929, 935, 234 S.E.2d 269, 273 (1977) (holding that the prosecution of a *nolle prosequied* charge may proceed in the future, although a new indictment is required). However, the record on appeal here contains no indication that the Pittsylvania County authorities ever intended to re-indict Bunker. Therefore, appellant fails to create an inference that Bunker's testimony in appellant's Halifax County murder trial "was motivated by an expectation of leniency in a future trial" in Pittsylvania County on a future robbery indictment. See Whittaker v. Commonwealth, 217 Va. 966, 968, 234 S.E.2d 79, 81 (1977). In light of these facts, to conclude otherwise would essentially permit a *nolle prosequi* at some point in the past (even many years ago) of a felony indictment against a prosecution witness to be used as evidence to attack that witness at any point in the future, because the witness would be supposedly afraid – even many years later – of being re-indicted for the felony offense for which he had once been indicted.

## III. CONCLUSION

For the foregoing reasons, we affirm appellant's convictions for first-degree murder and use of a firearm in the commission of murder.

<u>Affirmed.</u>