PRESENT: All the Justices

DEON ERIC COUPLIN

                                                  OPINION BY
v.  Record No. 041985                    JUSTICE G. STEVEN AGEE
                                                  June 9, 2005
AUBREY GILL PAYNE, JR.

              FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                      R. Terrence Ney, Judge

     Deon Eric Couplin, the plaintiff in a personal injury

action arising from a collision between his vehicle and a

Metropolitan Washington Airport Authority ("MWAA") ambulance

driven by the defendant, Aubrey Gill Payne, Jr., appeals from

the judgment of the trial court holding that Code § 5.1-173(B)

afforded Payne immunity from his alleged gross negligence

causing the accident.  The issue before us is whether Code

§ 5.1-173(B) accords employees of the MWAA immunity from tort

claims of gross negligence while engaged in the performance of a

governmental function.  We conclude that the statute does not

accord immunity to MWAA employees in such circumstances and

therefore we will reverse the judgment of the trial court.

              I.    BACKGROUND AND PROCEEDINGS BELOW

     On August 16, 2000, Payne, an MWAA employee, was operating

an MWAA ambulance when he received a radio dispatch to respond

to an accident in the eastbound lanes of the Dulles Access Road

in Fairfax County, Virginia.  In response to the radio dispatch,

Payne entered the westbound Dulles Access Road from an on-ramp

                                1

and attempted to cross the westbound lanes of traffic to a median crossover to reach the accident site in the eastbound lanes. In the course of traversing the westbound lanes, Payne's MWAA ambulance struck Couplin's vehicle which was traveling in the far left westbound lane, causing Couplin to lose control of his vehicle and "run off" the highway. As a result of the accident, Couplin alleged he sustained severe injuries.

Couplin timely filed a motion for judgment against the MWAA and Payne[1] in the Circuit Court of Fairfax County alleging gross negligence in the operation of the ambulance which caused the accident and Couplin's injuries. In response, the MWAA and Payne filed a joint plea in bar interposing the statutory grant of immunity under Code § 5.1-173(B).

At the plea in bar hearing in the trial court, Couplin conceded, as he does on appeal, that the MWAA is immune from suit under Code § 5.1-173(B) because under the circumstances of this case, the operation of the ambulance was in the performance of a governmental function. After argument and briefing by counsel, the trial court sustained the plea in bar as to Payne. The trial court opined that the statute barred a claim against a

---

[1] Dollar Thrifty Automotive Group, Inc. and State Farm Mutual Insurance Co. had uninsured motorist exposure in the original suit and were named as defendants. The instant proceedings have no effect on their status as defendants in this case.

MWAA employee for any tort committed in the course of performing a governmental function, including those involving grossly negligent conduct. By order of May 27, 2004, incorporating its bench ruling, the trial court dismissed Couplin's claim against Payne and the MWAA with prejudice. We awarded Couplin this appeal.

## II.  ANALYSIS

The General Assembly established the MWAA in 2001 to acquire, operate and protect Ronald Reagan Washington National Airport and Washington Dulles International Airport and related facilities.[2]  Code § 5.1-154; Acts 2001, ch. 342.  The MWAA performs many governmental functions in the discharge of its delegated powers, including the operation of emergency public services such as the ambulance service for which Payne was operating a vehicle at the time of the accident.  Code § 5.1-156.  In establishing the MWAA, the General Assembly specifically set forth the scope of tort liability of the MWAA in Code § 5.1-173(B), which provides as follows:

> B.  The Authority shall be liable for its contracts and for its torts and those of its members, officers, employees, and agents committed in the conduct of any proprietary function, in accordance with the law of the Commonwealth of Virginia but shall not be liable for any torts occurring in the performance of a governmental function.  The exclusive remedy for such

---

[2] The MWAA was created in conjunction with the District of Columbia.  Code § 5.1-152, et seq.

3

breach of contracts and torts for which the Authority shall be liable, as herein provided, shall be by suit against the Authority. Nothing in this act shall be construed as a waiver by the Commonwealth of Virginia or the District of Columbia or of their political subdivisions of any immunity from suit.

The first two sentences of subsection B make it clear that the MWAA is directly and solely liable for the torts of its employees "committed in the conduct of any proprietary function." Couplin concedes that Payne's operation of the MWAA ambulance was in the performance of a governmental function and thus he cannot maintain a cause of action against the MWAA or Payne on the basis that the accident was in the conduct of a proprietary function.

The last clause of the first sentence of subsection B clearly provides that the MWAA "shall not be liable for any torts occurring in the performance of a governmental function." Couplin concedes this provision bars any claim by him against the MWAA for liability as a result of the accident.

Unlike the specific provisions of the first sentence of subsection B that assign liability to the MWAA for its employees' torts "committed in the conduct of any proprietary function," there is no corresponding language regarding torts committed by MWAA employees while engaged in the performance of a governmental function. The MWAA argued to the trial court, and argues on appeal, that the statute should be read to also

4

bar claims against MWAA employees for torts committed during performance of a governmental function.[3]

The MWAA contends that the phrase "shall not be liable for any torts," in Code § 5.1-173(B), is intended to mean torts committed either during a proprietary or governmental function. Further, the MWAA argues that when this clause is read with the second sentence of subsection B, "the exclusive remedy for such . . . torts . . . shall be by suit against the Authority," the statute intends to bar any tort cause of action directly against an MWAA employee. To read this language otherwise, the MWAA argues, would defeat the purpose of the statute because "[t]he statutory grant of immunity would be toothless under the plaintiff's argument that the employee was not immune[] because the authority would be indirectly liable for the employee's torts."

In response, Couplin argues that the statute means what it says and no more. He contends that since the statute does not provide any limit on an employee's liability in the performance

---

[3] While not cited by either party on the present appeal, in Washington Metro. Area Transit Auth. v. Briggs, 255 Va. 309, 497 S.E.2d 139 (1998), the Court considered Section 80 of the Washington Metropolitan Area Transit Regulation Compact, codified in Code §§ 56-529 and -530, which contains the same operative language as Code § 5.1-173(B). The provisions were described as waiving the Authority's sovereign immunity for torts committed by its employees "in the conduct of any proprietary function," but the issue argued on the present appeal was not there presented.

5

of a governmental function, then the common law tort liability

of governmental employees would govern any cause of action

against Payne.

The trial court agreed with the MWAA, noting "[i]t's

absolutely not clear and all we can do is look to the language

of the statute."  The trial court then concluded that the

statutory immunity of Code § 5.1-173(B) implicitly shielded

Payne from liability in performing a governmental function:

> I think it doesn't make any sense to have the
> authority enjoy immunity and the employee not . . . .
>
> . . . .
>
> The language of the section does not include any
> language specifically stating that the employees enjoy
> the same exemption, that is the same immunity, but it
> does provide that the authority is responsible for the
> torts of its employees.  Thus, even though the
> authority may not be sued directly, if it is
> responsible for the torts of its employees and if its
> employees may be sued, then the authority is
> indirectly responsible.

We agree with Couplin's analysis of the statute and

thus find the trial court erred in sustaining Payne's plea

in bar.

> Under the basic principles of statutory construction,
> we must determine the General Assembly's intent from
> the words contained in a statute.  When the language
> of a statute is unambiguous, we are bound by the plain
> meaning of that language and may not assign the words
> a construction that amounts to holding that the
> General Assembly did not mean what it actually stated.

6

<u>Commonwealth v. Diaz</u>, 266 Va. 260, 264-65, 585 S.E.2d 552, 554 (2003) (citations omitted).

Subsection B of Code § 5.1-173 clearly subjects the MWAA to liability for the torts of its employees committed during the performance of a proprietary act and provides that such an action against the MWAA is the exclusive remedy for an employee's proprietary torts. It is just as clear that torts committed in a proprietary function are the only torts "for which [MWAA] shall be liable." The plain language of the statute thus belies the MWAA's argument that the exclusive remedy provision applies to torts committed in a governmental function because those are not torts "for which the Authority shall be liable."

The plain language of the statute similarly negates the MWAA's argument that the "any torts" language of the first sentence of subsection B relieves MWAA employees of their liability for governmental function torts. To the contrary, immunity applies under the statute's clear terms only to "The Authority" (the MWAA) when a tort is committed during the performance of a governmental function.

Without question, the General Assembly knows how to grant immunity to MWAA employees, as it clearly did in the second sentence of subsection B, for torts committed in the conduct of a proprietary function. There is simply no such statutory

7

immunity written in the statute for MWAA employee torts committed during the performance of a governmental function. This is a significant statutory expression because "the mention of . . . specific item[s] in a statute implies that other omitted items were not intended to be included within the scope of the statute." Smith Mountain Lake Yacht Club v. Ramaker, 261 Va. 240, 246, 542 S.E.2d 392, 395 (2001). Under the principle of expressio unius est exclusio alterius, we must conclude the General Assembly intentionally excluded a grant of statutory immunity to MWAA employees for torts committed during a governmental function.

Moreover, the codification of immunity in Code § 5.1-173(B) is in derogation of the common law. In such a circumstance, only those parts of the common law directly altered by the statute are deemed to be changed. As we have previously explained:

> The common law will not be considered as altered or changed by statute unless the legislative intent is plainly manifested. A statutory change in the common law is limited to that which is expressly stated or necessarily implied because the presumption is that no change was intended. When an enactment does not encompass the entire subject covered by the common law, it abrogates the common-law rule only to the extent that its terms are directly and irreconcilably opposed to the rule.

Boyd v. Commonwealth, 236 Va. 346, 349, 374 S.E.2d 301, 302 (1988) (citations omitted).

8

There is no legislative intent "expressly stated or necessarily implied" in Code § 5.1-173(B) according statutory immunity to MWAA employees for torts committed while performing a governmental function. Accordingly, the common law rule of liability for gross negligence on the part of a governmental employee remains unaltered by the enactment of Code § 5.1-173(B). As we expressed on prior occasions:

> In Virginia, a government agent entitled to the protection of sovereign immunity is not immunized from suit. Rather, the degree of negligence which must be shown to impose liability is elevated from simple to gross negligence.

Colby v. Boyden, 241 Va. 125, 128, 400 S.E.2d 184, 186 (1991) (citation omitted). See also Friday-Spivey v. Collier, 268 Va. 384, 601 S.E.2d 591 (2004).[4]

Notwithstanding the foregoing, the MWAA contends the statute should be read to create immunity for claims against MWAA employees because the MWAA may have indirect liability for a claim such as Couplin's. This argument is unpersuasive. Nothing in the record establishes that the MWAA has any liability to Payne should Couplin obtain a judgment against him. Even if the MWAA had some contractual or other indemnity obligation to Payne, it would not bear on the application of the

---

[4] The application of sovereign immunity for a governmental employee where gross negligence is not alleged, is controlled by the principles enunciated in James v. Jane, 221 Va. 43, 282

9

statutory provision because we are bound by the plain meaning of the statute, which affords no immunity in this case.

> We presume that the legislature chose, with care, the words it used when it enacted the statute. Courts cannot add language to the statute the General Assembly has not seen fit to include. Nor are they permitted to accomplish the same result by judicial interpretation. Where the General Assembly has expressed its intent in clear and unequivocal terms, it is not the province of the judiciary to add words to the statute or alter its plain meaning.

Jackson v. Fidelity & Deposit Co., 269 Va. 303, 313, 608 S.E.2d 901, 906 (2005) (citations and internal quotation marks omitted).

### III. CONCLUSION

Code § 5.1-173(B) provides no statutory immunity to Payne as an MWAA employee for a tort committed in the performance of a governmental function for the MWAA. Accordingly, the trial court's judgment sustaining Payne's plea in bar was in error. We will, therefore, reverse the judgment of the trial court and remand the case for further proceedings in accordance with this opinion.[5]

---

S.E.2d 864 (1980) and Messina v. Burden, 228 Va. 301, 321 S.E.2d 657 (1984).

[5] Payne asserted on brief that this court should affirm the trial court's judgment, even if we find Code § 5.1-173(B) does not accord him immunity, because Payne's alleged conduct does not constitute gross negligence. However, Payne specifically advised the trial court that "we don't need to get into the gross negligence issue" if the trial court agreed with his argument under Code § 5.1-173(B). Accordingly, we do not consider Payne's argument. Rule 5:17(c). Payne may, however,

10

<u>Reversed and remanded</u>.

---

raise this argument on remand.  <u>See</u> <u>Baumann v. Capozio</u>, 269 Va. 356, 361, 611 S.E.2d 597, 600 (2005).